Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 29 2013, 5:24 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ROBERT L. MURRAY**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT L. MURRAY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1205-PC-274 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
The Honorable Natalie Bokota, Magistrate
Cause No. 45G04-1003-PC-7

**July 29, 2013**

**MEMORANDUM DECISION ON REHEARING – NOT FOR PUBLICATION**

**NAJAM, Judge**

On rehearing, Murray correctly points out that this court's memorandum decision in Murray v. State, 45A05-1205-PC-274 (Ind. Ct. App. May 28, 2013), omitted discussion of two issues Murray had raised on appeal. Both issues relate to the use of false testimony elicited by the State from Issa Haddad. We grant his petition for rehearing for the limited purpose of addressing the two omitted issues regarding false testimony. In all other respects, we affirm our memorandum decision.

Murray contends that his trial counsel was ineffective for failing to object to the prosecutor's examination of Issa Haddad, which allegedly resulted in the admission of false testimony. He also argues that the admission of that purportedly false testimony violated his due process rights. Both issues require us to consider first whether the testimony by Issa Haddad at issue was, in fact, false. We conclude that it was not.

By way of brief review, Murray was charged with robbery and confinement, as Class B felonies, in connection with the robbery by five men of a liquor store in Hammond on December 21, 2007. At the time of the robbery, Talat Haddad was working in the store, and with him was his seventeen-year-old son Issa. Issa saw the robbery from the office at the back of the store. He tried to telephone for help, but two gunmen appeared in the office and demanded information from Issa about the safe. The gunmen also took a handgun from the office desk and hit Issa on the head before leaving.

When interviewed by police on December 26, the store owner listed in his statement a handgun as missing from the back office after the robbery. In a voluntary statement given to police after the robbery, Issa reported that the perpetrators had found a

handgun in the office desk.  On appeal Murray pointed to the following part of a transcript of Issa's statement:

> Q:     The Hammond Police are investigating a robbery to [sic] a business located at 6045 Calumet Ave[nue,] Hammond, Indiana (Sunrise Liquors) that occurred on December 21, 2007.  Please tell me in your own words what you know about this incident[.]
>
> A:     My dad works from 5 p[.]m. to 2:00 a[.]m. on Friday and Saturday and he wanted me over to burn a disc for him.  I was in the process of doing that in the office.  Then, my dad was in the office with me.  It was about ten seconds after my dad walked out that I heard arguing.  So, I get up to walk to see what was going on.  A]s I am walking towards the doorway two people come into the back office.  So, one guy is holding up a[n] AK-47 towards me the whole time and the guy with the handgun comes toward me and he is demanding to tell him where the safe is.  I told him[,] "It's my first day and I don't know where it is located!"
>
> Q:     What happened next?
>
> A:     He told me to get on my knees and turn around and lie down.  So, then as I am on the ground they are searching the cabinets and drawers.  Then they found the owner's handgun in the drawer cabinet.  Then, they are still searching and hit me on the head before walking out.

Post-Conviction Petitioner's Exh. 1 at 1 and 2.  But at trial, Issa testified as follows:

> Q:     Did they [the robbers] find whatever they were looking for?
>
> A:     I don't know.
>
> Q:     Did they find anything?
>
> A:     I don't know.
>
> Q:     Do you know if the owner had any weapons back there?
>
> A:     I don't know.

Trial Transcript at 66-67.

3

Murray contends that the discrepancy between the statement Issa gave to police, in which he said that one of the robbers had taken the store owner's handgun from a cabinet, and his trial testimony, in which he said he could not remember what the robbers had taken, constitutes false testimony that the State knowingly put before the jury. "[T]he prosecution may not stand mute while testimony known to be false is received into evidence. False evidence, when it appears, must not go uncorrected." Coleman v. State, 946 N.E.2d 1160, 1167 (Ind. 2011) (internal quotation marks and citation omitted). But the fact of contradictory or inconsistent testimony does not mean the testimony is false. Id. (citing Timberlake v. State, 690 N.E.2d 243, 253 (Ind. 1997) ("While the knowing use of perjured testimony may constitute prosecutorial misconduct, contradictory or inconsistent testimony by a witness does not constitute perjury.")). Here, Issa's trial testimony that he did not remember whether the robbers found anything is at most inconsistent with his previous statement. See Coleman, 946 N.E.2d at 1167 (witness's "testimony during retrial that he said nothing when entering Coleman's yard is at most inconsistent with his testimony during the first trial. To refer to the statement as false is mere hyperbole."). Murray has shown only that Issa's trial testimony is inconsistent, not that it is false. And because Murray has not shown that Issa gave false testimony at trial, his claims that his trial counsel was ineffective for failing to object to that testimony and that the admission of that testimony violated his due process rights must fail.

Murray also contends that our memorandum decision "misstated the facts in a material way regarding amendments" to his petition for post-conviction relief. Brief on Rehearing at 3. In support, he recites the procedural post-conviction history and alleges

4

that our decision "made no reference to the record." Id. Murray does not make a cogent argument on this issue. Although it is not clear from his brief, it appears that Murray contends that the fact that the decision did not mention an additional motion to amend his post-conviction petition in the procedural history amounts to a "material" misstatement of the facts. We cannot agree. Because the trial court did not rule on that petition, it was not and is not before us. And, further, Murray did not allege that the trial court's failure to rule on Murray's final motion to amend his petition constituted reversible error. Our omitted reference to Murray's final motion to amend his petition is immaterial and, therefore, not a basis for relief.

Affirmed on rehearing.

BAILEY, J., and BARNES, J., concur.